STATE OF GEORGIA
SUPERIOR COURT OF DEKALB COUNTY

| | | |
|---|---|---|
| SAM L. BRANNEN, JR., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | FILE NO. 18 CV 4366 4 |
| v. | : | |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| DEKALB COUNTY, GEORGIA, | : | |
| OVERTIS H. BRANTLEY, in her individual | : | |
| capacity, JAMES M. OTTLEY, in his | : | |
| individual capacity, | : | |
| | : | |
| | : | |
| Defendants. | : | |

## RECAST FIFTH AMENDED COMPLAINT

Plaintiff Sam L. Brannen, Jr. ("Plaintiff") files this his Recast Fifth Amended Complaint against Defendants DeKalb County, Georgia ("County"), Overtis H. Brantley, in her individual capacity ("Brantley"), and James M. Ottley, in his individual capacity ("Ottley").

## INTRODUCTION

1.

This is a suit for monetary damages against Defendants for injuries suffered by Plaintiff due to the wrongful actions of Defendants as described and referenced herein. Plaintiff asserts claims herein for defamation, tortious interference, intentional infliction of emotional distress, violations of 42 U.S.C. § 1981 and 1985, violations of the rights to equal protection guaranteed by the United States and Georgia Constitutions, violations of the rights to free speech on matters of public concern guaranteed by the United States and Georgia Constitutions, violations of the rights to be free from unreasonable searches and seizures guaranteed by the United States and Georgia Constitutions, violations of the Georgia RICO Act, lost earnings, punitive damages, and

attorneys' fees. While Plaintiff has filed this Complaint *Pro Se* due to time constraints and other good cause, Plaintiff anticipates separate counsel will enter an appearance in this matter prior to trial.

## THE PARTIES

2.

Plaintiff is a resident of Fulton County, Georgia who subjects himself to the jurisdiction of this Court.

3.

Defendant County is a public employer and body corporate and politic under Ga. Const. Art. IX, § I, ¶ I, with its offices, including its law department, located in DeKalb County, Georgia.

4.

Defendant County may be served with process via personal service upon DeKalb County Chief Executive Officer Michael Thurmond, at the office of the DeKalb County CEO, Manuel J. Maloof Center, 1300 Commerce Drive, 6th Floor, Decatur, Georgia, 30030, or pursuant to waiver and acknowledgment as described in O.C.G.A. § 9-11-4(d).

5.

Defendant Brantley is a resident of Fulton County and is subject to this Court's jurisdiction. She may be served with process via personal service at her home located at 505 Stonebriar Way, S.W., Atlanta, Georgia, 30331, or pursuant to waiver and acknowledgment as described in O.C.G.A. § 9-11-4(d).

6.

Defendant Ottley is a resident of Cobb County and is subject to this Court's jurisdiction. He may be served with process via personal service at his place of business located at 4675

Shallowford Road, Suite 200, Atlanta, Georgia, 30338, or pursuant to waiver and acknowledgment as described in O.C.G.A. § 9-11-4(d).

## JURISDICTION AND VENUE

7.

This Court has subject matter jurisdiction over the claims herein for defamation, tortious interference, intentional infliction of emotional distress, violations of 42 U.S.C. § 1981 and 1985, violations of the rights to equal protection guaranteed by the United States and Georgia Constitutions, violations of the rights to free speech on matters of public concern guaranteed by the United States and Georgia Constitutions, violations of the Georgia RICO Act, lost earnings, punitive damages, and attorneys' fees.

8.

Venue is proper in this Court due to the County's principal offices being located in DeKalb County, Georgia.

9.

All legal or procedural requirements, including the requirement of ante litem notice where applicable, have been satisfied as to the claims set forth herein.

## FACTUAL ALLEGATIONS

10.

By the fall of 2011, Plaintiff was made aware, through channels outside of his work and/or assigned cases and matters, of evidence and allegations of corruption among certain employees at the DeKalb County Department of Watershed Management.

11.

In January of 2012, as reported by the media, a special purpose grand jury was empaneled to investigate corruption in the DeKalb County Department of Watershed Management.

12.

Plaintiff did not take any improper or otherwise wrongful action or inaction at any time during the course and scope of his employment with the County and was not a subject of the special purpose grand jury inquiry.

13.

In January 2013, as reported by the media, the home and office of the (then) DeKalb County CEO Burrell Ellis were searched due to alleged bid rigging, *et al*.

14.

As reported in the public minutes of the County, and also by the media, Brantley was hired in the spring of 2013 as County Attorney for DeKalb County, at Ellis' direction.

15.

Upon information and belief, and as reported by the media during the subsequent criminal trial of the embattled former CEO, around the time of Brantley's hire Ellis indicated to at least one person that he was bringing some "strong brothers and sisters" to positions within the County to assist him.

16.

Brannen is a white male who was 44 years old when Defendants terminated his employment.

17.

Brannen had served as either an Assistant County Attorney or Senior Assistant County

Attorney in the DeKalb County Law Department for eleven and one-half years before his termination.

18.

Shortly after Brantley arrived she ended the office policy and practice of attorneys preparing monthly reports and other data.

19.

Monthly reports and other data routinely collected under previous county attorneys provided an objective basis for evaluating attorney performance.

20.

Brantley ceased (at least for Plaintiff) the practice of performing annual performance reviews of attorneys.

21.

Plaintiff met or exceeded expectations in all objectively measured or recorded categories during the entire time he was employed by the County.

22.

Over the course of his employment with the County, Plaintiff had earned a reputation for ethical conduct and accurate, timely, and quality work product grounded in the text of applicable law, rules, and regulations.

23.

While employed with the County, Plaintiff engaged in protected activity under the Georgia Whistleblower Act, O.C.G.A. § 45-1-4 *et seq.,* when he disclosed evidence of violations of laws, rules, or regulations to one or more of his supervisors.

24.

While employed with the County, Plaintiff engaged in protected activity under the Georgia Whistleblower Act, O.C.G.A. § 45-1-4 *et seq.,* when he refused Brantley's efforts to assign him to a matter he reasonably believed involved violations of laws, rules, or regulations.

25.

Brantley characterized Plaintiff's refusal to accept assignment in a matter he reasonably believed involved violations of laws, rules, or regulations as "insubordination."

26.

Brantley's characterization of Plaintiff's refusal as "insubordination" was contrary to longstanding office custom and practice, as well as contrary to Brantley's treatment of non-white Assistant and Senior Assistant County Attorneys.

27.

On more than one occasion shortly after she arrived at the County, Plaintiff heard Brantley in casual conversation refer to her method of dealing with "employment issues" as follows: "Create the right environment and things take care of themselves."

28.

After disclosing violations of laws, rules, or regulations to his supervisors, and refusing to participate in conduct he reasonably believed involved such violations, Plaintiff suffered a pattern of wrongful and unlawful action aimed at "creating the right environment" (*e.g.,* an environment conducive to causing an employee to leave employment with the County) for Plaintiff.

29.

During mid-2013, Plaintiff began to experience problems with his work computer being unusually slow and the web browser frequently locking up while performing legal research, *et al.*

On several occasions during 2013 and 2014, Plaintiff arrived at work to find his work computer had (apparently) been reset. For example, user settings for Outlook email were reset and web browser stored passwords had been eliminated or, perhaps, stolen. Plaintiff reported IT "trouble tickets" for more than one such event without resolution.

30.

During this time period, in casual conversation with others present, Brantley commented about the capabilities of the County's IT administrator, John Matelski, saying "just ask him and he will do anything, whatever you want."

31.

On May 2, 2013, Plaintiff left the County offices for a late lunch break. Plaintiff had oral argument on a motion in Gwinnett County Superior Court the next day, and for that reason he lugged a large trial case with relevant pleadings, exhibits, and a volume of the Georgia Code down to his car. As Plaintiff was leaving the County parking lot, he noticed a DeKalb County police vehicle pull out behind him. The vehicle continued to remain behind Plaintiff (through multiple turns and traffic lights), before appearing to pull off at a shopping center approximately a mile from Plaintiff's home.

32.

When Plaintiff reached his home, he went into the kitchen to make a sandwich. While washing his hands near a window overlooking his front yard, Plaintiff saw a DeKalb County police vehicle edging towards, and then parking, just off of the side of his home.

33.

Plaintiff reasonably concluded it was possible, if not likely, the police vehicle had been following him, perhaps in an effort to harass and intimidate. (The informants, leakers,

whistleblowers, *et al.* that had ensnared Ellis had not yet been identified.) Plaintiff exited through a side door and took two pictures of the police vehicle at the end of his driveway. The police vehicle remained there as Plaintiff left to return to the County offices after finishing lunch approximately 30 minutes later.

34.

It was not typical for DeKalb County police vehicles to pass by Plaintiff's home, and certainly unprecedented to have one idling in front of Plaintiff's home.

35.

Upon arriving back at the office, Plaintiff informed two office neighbors, Michelle Thomas and Charles Reed, of what had occurred. One or both of the photos were sent to Charles Reed via email, at his request.

36.

After Brantley was hired, Plaintiff was in a meeting with department heads and employees to discuss and plan for a large transaction of substantial benefit to the County and its citizens. All of the individuals in the room were black, with the exception of Plaintiff and one other white male sitting to his right. Brantley arrived late/after the meeting had begun, and stated the only reason she had come to the meeting was to find out how she could get others involved in the transaction besides "them," gesturing towards Plaintiff and the white male to his right. Subsequently, Brantley hired several attorneys, all black, as independent contractors and assigned them to the matter. Plaintiff was excluded from many further project related meetings and telephone calls, with his role in the matter relegated to editing and correcting typographical errors in a few of the transaction documents.

37.

Several months before Brantley arrived, Plaintiff had been assigned to Alexis Kimball as a secretary/legal assistant, an assignment that was not within his control and was made without his input. Kimball, a black female, was not particularly experienced as a legal secretary (at least not in litigation matters), and had developed a reputation in the office for being difficult to work with. Kimball's work quality, work quantity, and responsiveness to Plaintiff's reasonable requests noticeably declined after a private morning meeting between Kimball and Brantley in the late Spring or early Summer of 2013, and her attitude reflected a new indifference to her performance with regard to Plaintiff and tasks assigned by him. On repeated occasions over the next year, Kimball misfiled form and routine documents and otherwise failed or refused to perform her job duties with respect to Plaintiff's matters. In the late fall of 2016 (in excess of two years later), and continuing recently, Plaintiff learned of other errors by Kimball with respect to Plaintiff's matters during that time period.

38.

In or around the spring of 2014, Plaintiff reminded Brantley that he would be out of the office for a few days of personal leave. In response, she commented to Plaintiff that "[Plaintiff needed] to get a tan" before returning to work with DeKalb County. The comment struck Plaintiff as a veiled threat to Plaintiff's employment with the County, or at a minimum a very inappropriate and reckless comment.

39.

While walking from Brantley's office back to his after the comment, Plaintiff passed then Chief Assistant County Attorney Duane Pritchett's office. Plaintiff relayed the comment by Brantley to Pritchett and expressed that he was offended.

40.

Subsequent to the DeKalb County Police vehicle incident, the transaction planning meeting statement and following conduct, and the "tan" comment from Brantley, Plaintiff had a brief conversation with Chief Assistant County Attorney Laura Johnson in which he complained of such behavior.

41.

In or about the spring of 2014, upon information and belief after the conversation set forth in Paragraph 40, Plaintiff received a personal DeKalb County water bill of approximately $700.00.

42.

At the time of the outrageous water bill, Plaintiff lived alone in his home, and spent much of his time elsewhere. Plaintiff's typical water bill was a small fraction of the outrageous amount billed.

43.

An evaluation of the home's water system and meter for leaks was negative. The County division responsible refused to investigate and would not reduce the bill other than slightly.

44.

Plaintiff ultimately paid substantially all of the outrageous bill because he was a County employee, and surmised a dispute could create a legal conflict that would be used to negatively impact his employment.

45.

Upon information and belief, the incredible water bill error, and the lack of willingness of County employees to correct the issue, were part of an effort to "create the right environment" for Plaintiff on account of his race and the fact that he was "regarded as" a whistleblower.

46.

In late April 2014, Brantley summoned Plaintiff to her office and informed Plaintiff that she "was not going to be [Plaintiff's] boss any longer." After Plaintiff asked what she meant, it became apparent that this was her method of communicating to Plaintiff that he was being terminated. Brantley refused to provide a reason for her action, stating that as an at-will employee Plaintiff was not entitled to a reason.

47.

Brantley had on at least one prior occasion, and upon information and belief also at the April 2014 "termination" meeting, described Plaintiff as a "brilliant" attorney, at least implying if not acknowledging that neither work quality, work quantity, nor her opinion of Plaintiff's skills and abilities were the motivation for her action.

48.

At least one higher level County officer expressed the opinion Plaintiff was being targeted because of his race, and one also stated "You [Plaintiff] have a reputation of being too honest, and that makes those who are not very nervous."

49.

Shortly before the April 2014 "termination" meeting, Plaintiff received an unprivileged and odd email from an outside attorney referencing damages available under Title VII that he reasonably believed was a warning to Plaintiff. Plaintiff forwarded this email to Laura Johnson shortly after it was received. Plaintiff regrets forwarding the email because he understands the person who sent it suffered as a result.

50.

Plaintiff left employment with the County in May 2014, accepting a severance that kept

Plaintiff "on the books" for a period of time (although he was allowed to work elsewhere), in exchange for a release of certain claims not at issue here.

51.

Subsequent to Plaintiff's termination, Kimball was promoted. She remains in the employ of DeKalb County.

52.

When Plaintiff left employment with the County in 2014, he copied various personal files and correspondence from his work computer onto a flash drive, which he later copied to his home computer. In late May 2016 (over two years later), a deep scan of the computer uncovered several files originating from the County work computer (and no other files) had been infected with what was identified as a Trojan virus or malware.

53.

Despite leaving employment with DeKalb County during the midst of a controversy relating to alleged misconduct by County officials and employees, Plaintiff believed his reputation was intact and hoped the continual quality, integrity, and success of his work would eventually overcome any potential detractors.

54.

In February 2015 and on April 13, 2016, Plaintiff, then working with a separate employer, received overwhelmingly positive performance reviews from his then supervisor, Moore.

55.

While employed under Moore: (1) presentations and educational programs for which Plaintiff served as an instructor were well-received and/or received high participant ratings; (2) litigation efforts were successful, leading at least one defense counsel to remark that a brief

Plaintiff had written was "one of the best he had ever read;" and (3) to Plaintiff's knowledge, information, and belief, all work tasks performed by him met or exceeded expectations.

56.

Less than three weeks after the April 13, 2016 positive performance review, on or about May 4, 2016, Moore appeared in Plaintiff's office doorway and told him he was not needed any longer. No reason was given.

57.

Moore's action was taken on or about the date Plaintiff had left employment with the County two years prior, and not long after the limitations periods applicable to certain claims against DeKalb County and Brantley arising from Plaintiff's termination from employment expired. Further, such action was taken after Brantley learned of Plaintiff's likely adverse testimony against her, and not long after Moore raised the subject of Brantley in a conversation with Plaintiff.

58.

Moore has and/or will receive value or other benefits, directly or indirectly, as a result of her wrongful conduct against Plaintiff, *e.g.*, the hiring of a female under the age of 40 for Plaintiff's position, which person had been identified before Plaintiff was told he was 'no longer needed.'

59.

Shortly before Thanksgiving in November, 2016, Plaintiff became aware Brantley had specifically excluded or restricted Plaintiff from working on any matters involving County officers and employees, wrongfully interfering with his business opportunities. Plaintiff became aware when, inter alia, David Ware, a business colleague and "supervisor" with a subsequent separate employer, told Plaintiff that they "had tried and tried to talk to OV [Brantley], but she is resolute

that [Plaintiff] get nothing."

60.

After April 22, 2017 (after exercising reasonable diligence to investigate the facts and prior controlling law to confirm his suspicion, including a discussion with the person who shared the information, completed on or about April 24, 2017, and more fully after being contacted by Reed and Ware unexpectedly on the afternoon of April 26, 2017), Plaintiff became aware Brantley, and County employees under her direction and control, had engaged in defamation of Plaintiff's personal and professional character by, inter alia, authoring and publishing memorandums and other writings (several of which have been provided to Plaintiff) stating and implying Plaintiff had made certain errors during his employment with the County, when Brantley knew or should have known the reverse was factually and legally true (*e.g.,* memorandum regarding calculations under O.C.G.A. § 48-8-104).

61.

During March through July 2017, Plaintiff was working on a litigation matter for a separate employer that required the testimony of two DeKalb County Police officers. The DeKalb County Police officers, D. Pena and R. Weber, each failed or refused to obey valid and lawful subpoenas for their depositions, stating that their "chain of command prohibited it." No motion was filed to quash or otherwise challenge the legal validity of the subpoenas. Officer Pena ultimately relented and was deposed. Officer Weber was not deposed, refusing to comply with the lawful subpoena. Upon information and belief, the DeKalb County law department was routinely involved in evaluating and providing direction to county employees who had received subpoenas.

62.

In communicating with the DeKalb County Police officers in March through June of 2017,

Plaintiff noted that their return telephone calls to him generally came from what appeared as randomly generated fake telephone numbers. When asked, one or both of the officers attributed it to their use of a system or device that disguised or hid their true telephone numbers.

63.

From at least March 2017 through at least September 2017, Plaintiff received frequent recurring calls from apparently randomly generated fake telephone numbers (identical in nature to those received from the DeKalb County officers and apparently sent by or on behalf of the County and/or Brantley) on both his personal cell phone, his unlisted and rarely used home phone, and his office work phone.

64.

The volume and nature of the calls, including at least two that involved veiled threats, interfered with Plaintiff's business and personal life.

65.

On or about April 25, 2017, a business colleague and former friend named James M. Ottley, who upon information and belief was working at the direction of and/or in concert with other Defendants, attempted to extort Plaintiff.  Ottley demanded funds from Plaintiff that Ottley was not otherwise legally or factually entitled to, in apparent exchange for his not spreading false, defamatory statements about Plaintiff.

66.

At the evening meeting Ottley, with whom at this point in time Plaintiff rarely socialized, presented in an agitated state that startled Plaintiff and appeared to be related to substance abuse or, at a minimum, severe stress. Ottley complained that he was having financial problems, stating he had recently been unable to make monthly payroll for employees at his business.

67.

Ottley repeatedly raised negative events from Plaintiff's employment at the County and stated and/or implied (falsely, in the presence of third parties) Plaintiff had engaged in some unspecified misconduct. When Plaintiff remarked he recently (after engaging in research and discussions) had become suspicious of an apparent campaign orchestrated by Brantley to damage his reputation in oral and written communications, Ottley (loudly, and more than once) blurted with apparent glee that Plaintiff was "being squeezed," in apparent confirmation of the campaign.

68.

Plaintiff refused the illegal and improper attempt by Ottley to extort him or otherwise wrongfully obtain monies from Plaintiff.  In response, Ottley promised to bring about negative consequences for Plaintiff.

69.

After April 25, 2017, Ottley, working at the direction of and/or in concert with other Defendants, spread defamatory statements about Plaintiff, both orally and in writing, to Plaintiff's friends, acquaintances, and professional colleagues (including, but not limited to, Charles Scholle, Robert Ottley, Kelly Black-Holmes, and Charles Bonner) and took action to otherwise harm Plaintiff's reputation.

70.

On July 7, 2017, Plaintiff had a telephone conversation with Ottley in which Plaintiff sought to obtain an explanation for Ottley's extortion attempt and subsequent defamatory emails and statements, at least one of which falsely and bizarrely accused Plaintiff of threatening a crime of violence (as an unwarranted and factually unsupported reaction to a lawful and proper comment).

71.

During the July 7, 2017 telephone conversation, Plaintiff stated to Ottley "you have known me for over 20 years, when have I ever been violent towards anyone?" Ottley responded by stating, "I know, I know . . .  But if you knew what we were up to there is no telling what you would do."

72.

Defendant Ottley has and/or will receive value or other benefits, directly or indirectly, as a result of his herein alleged wrongful actions with respect to Plaintiff.

73.

No later than May 2017, Brantley identified Plaintiff as a likely witness to the claims presented in an Amended Complaint filed by a former coworker of Plaintiff, given allegations in that civil action which mirror those set forth in Paragraph 40 of this Complaint (and, surely, Brantley's recollection of the event). *See Thompson v. Brantley, et al.,* Superior Court of DeKalb County, Civil Action File No. 16-cv-5485-4, subsequently removed to the United States District Court for the Northern District of Georgia, Civil Action File No. 1:17-cv-02244).

74.

Brantley identified Plaintiff as a potentially adverse witness in the *Thompson* case as early as May 2016 (when *Thompson*'s initial Complaint was filed).

75.

 Brantley identified Plaintiff as a potentially adverse witness as early as December 2015 (when *Thompson*'s demand letter and EEOC complaint were filed).

76.

Plaintiff first became aware in late July or early August 2017 that he had been formally identified as a potential witness in the *Thompson v. Brantley, et al.* matter when he was informed

of Rule 26(a) initial disclosures filed in the matter (which had by then been removed to the United States District Court for the Northern District of Georgia).

77.

Until April 2018 (after being contacted by lead counsel for the Defendants in the *Thompson* matter in late March 2018), Plaintiff was unaware that an event relating to his employment had been raised in, or otherwise made a part of, claims made in *Thompson v. Brantley, et al.*

78.

Once Brantley identified Plaintiff as a potentially adverse witness, Brantley renewed and accelerated her efforts to "create the right environment" for Plaintiff, which efforts were intended to silence Plaintiff on a matter of public concern and/or damage Plaintiff's reputation and standing in the legal community. Brantley's efforts in this regard, taken in concert with other Defendants, were wrongful, unlawful, and proscribed by, inter alia, O.C.G.A. §§ 16-10-93, 16-10-97, 16-11-37, and 16-11-62.

79.

In April 2018, Plaintiff learned Brantley, while serving as the Chief Legal Officer for DeKalb County, had to third parties falsely and maliciously characterized Plaintiff's separation from employment with the County as being due to some infirmity or misconduct on the part of Plaintiff (as opposed to the wrongful and tortious conduct described herein).

80.

No earlier than June 20, 2017, Plaintiff became aware that from at least March through late July of 2017 David Ware, a business colleague and then "supervisor" with a subsequent employer, had at the direction of and in concert with Defendants engaged in conduct (alone and in conjunction with subordinates) to injure Plaintiff's reputation and standing in his profession. Such conduct

involved acquiescing to Brantley's demands that Plaintiff be excluded from work and otherwise "get nothing," and included: excluding Plaintiff from meetings, telephone calls, and correspondence regarding matters to which Plaintiff was assigned; failure or refusal to notify Plaintiff of a pending trial calendar to which Plaintiff was assigned; failing to properly file case documents; coordinating with Ottley and/or Brantley on June 20, 2017, *et al.*; and, once Defendants' wrongful and unlawful actions began to have their intended effect, stating in Plaintiff's presence and in the presence of others (although they did not know Plaintiff was nearby) that Plaintiff "will not be [at this firm] much longer."

81.

Plaintiff left employment with that firm in July 2017 as a direct and proximate result of the wrongful conduct set forth herein.

82.

The County and Brantley, and perhaps others, induced and caused the wrongful actions of Ware by offering to retain and continuing to retain Ware as legal counsel.

83.

During January through March 2018, Plaintiff learned Brantley, and/or others on her behalf, had apparently spread the rumor that Plaintiff was no longer practicing law or had been excluded from the practice of law, with the intent and object of injuring Plaintiff's reputation and standing in his profession and depriving him of business opportunities.

84.

Plaintiff is presently engaged in the practice of law, but has and continues to suffer loss and damage due to the wrongful, retaliatory, tortious, and otherwise unlawful conduct of Defendants.

85.

In April 2018, a longstanding Georgia Democrat political figure stated: "There's an old playbook in Democratic politics in Georgia. It begins with accusations of corruption. You then add whisper campaigns that raise specters of things that aren't quite provable, but no one is going to ask the question so it just settles into truth. Then you add a little patina of grievance and concern."

86.

The "old playbook" set forth above at least partially describes Brantley's actions in relation to Plaintiff, and other similarly situated white persons, for whom Brantley has wrongfully endeavored to "create the right environment."

87.

At all times material to this Complaint, including while engaging in the conduct set forth herein and otherwise giving rise to Plaintiff's claims, Defendants acted under color of state law.

88.

Defendant Brantley was, at all times material to this Complaint, the highest department official with authority to hire and fire, and otherwise control, the actions of employees of the County legal department, and by virtue of her position and resources exercised significant influence and control over the actions of other County departments, officers, and employees, (including certain police officers).

89.

At all times material to this Complaint, and through December 31, 2017, Brantley was vested with final decision-making authority over hundreds of thousands of dollars of public funds each year, which authority and funds she used to hire and/or influence outside attorneys and other

persons to engage in wrongful conduct (such as that set forth herein), on her behalf.

90.

The wrongful actions of Brantley set forth herein were not subject to, and did not require, higher review or approval.

91.

Brantley was the County's final decision maker with respect to each of the wrongful actions giving rise to this Complaint.

92.

Brantley was the County's final policymaking authority with respect to the actions and functions giving rise to this Complaint including, without limitation, her discriminatory, retaliatory, defamatory, and otherwise tortious conduct against Plaintiff. While engaging in the wrongful and illegal conduct giving rise to this Complaint, Brantley exercised final policymaking authority delegated to her by the County.

93.

Brantley undertook all of the unlawful and wrongful conduct set forth herein intentionally, willfully, maliciously, and without privilege with respect to Plaintiff and his state and federally protected rights.

94.

Additionally, and in the alternative, Brantley undertook all of the wrongful conduct set forth herein with reckless disregard for Plaintiff and his state and federally protected rights.

95.

Ottley undertook all of the unlawful and wrongful conduct set forth herein intentionally, willfully, maliciously, and without privilege with respect to Plaintiff and his state and federally

protected rights.

96.

Additionally, and in the alternative, Ottley undertook all of the above-pled conduct with reckless disregard for Plaintiff and his state and federally protected rights.

97.

Officer Weber undertook all of the unlawful and illegal conduct set forth herein intentionally, willfully, maliciously, and without privilege with respect to Plaintiff and his state and federally protected rights.

98.

Additionally, and in the alternative, Officer Weber undertook all of the above-pled conduct with reckless disregard for Plaintiff and his state and federally protected rights.

## COUNT I

## Defamation

99.

Based on the facts and allegations set forth in Paragraphs 56-83 and 85-98, Plaintiff asserts claims for defamation.

100.

The actions of Defendants set forth herein and referenced in the paragraph above establish: (1) false statements that were defamatory concerning Plaintiff made by Defendants, or on their behalf; (2) to third parties, without privilege; (3) fault by Defendants amounting to at least negligence; and (4) the actionability of the statements irrespective of special harm because the law infers malice and special damages under the facts of this case.

101.

The defamatory statements of Defendants concerning Plaintiff were, inter alia, made in reference to Plaintiff's trade, office, or profession and calculated to injure him therein, and falsely and bizarrely imputed to Plaintiff a threat of violence otherwise punishable by law. For these reasons, Defendants' conduct constituted defamation that is actionable per se, with malice and special damages inferred.

102.

Defendants undertook all of the unlawful conduct giving rise to Plaintiff's claims for defamation while acting under color of state law, which unlawful conduct went *far beyond* merely stigmatizing Plaintiff.

103.

Defendants' wrongful actions were intentional or reckless and/or taken in willful disregard of the natural and probable consequences of those actions.

104.

The wrongful conduct of Defendants has proximately caused damages to Plaintiff in amounts to be proven at trial.

## COUNT II

### Tortious Interference with Contract and Business Relations

105.

Based on the facts and allegations set forth in Paragraphs 54-57, 59-71, 73-83, and 85-98, Plaintiff asserts claims for tortious interference with contract and business relations.

106.

Defendants engaged in wrongful conduct against Plaintiff, without privilege, acted

- 23 -

purposefully and with malice and an intent to injure Plaintiff, induced breaches of contractual rights enjoyed by Plaintiff, and induced one or more third parties not to enter into, or continue, business relationships with Plaintiff.

107.

Defendants undertook all of the unlawful conduct giving rise to Plaintiff's claims for tortious interference while acting under color of state law.

108.

Defendants' wrongful actions were intentional or reckless and/or taken in willful disregard of the natural and probable consequences of those actions.

109.

The wrongful conduct of Defendants has proximately caused damages to Plaintiff in amounts to be proven at trial.

## COUNT III

## <u>Intentional Infliction of Emotional Distress</u>

110.

Based on the facts and allegations set forth in Paragraphs 54-57, 59-71, 73-83, and 85-98, Plaintiff asserts claims for intentional infliction of emotional distress.

111.

Defendants have intentionally or recklessly engaged in the wrongful and unlawful conduct set forth herein against Plaintiff, which conduct was extreme and outrageous, was severe, and caused and causes emotional distress with a physical impact.

112.

Defendants' conduct, as pled herein, was and is so extreme in nature and type that it goes

beyond all bounds of decency in a civilized society.

113.

Defendants' conduct, as pled herein, was so extreme that a reasonable man cannot be expected to endure it.

114.

Defendants undertook all of the unlawful conduct giving rise to Plaintiff's claims for intentional infliction of emotional distress while acting under color of state law.

115.

Defendants' wrongful actions were intentional or reckless and/or taken in willful disregard of the natural and probable consequences of those actions.

116.

The wrongful conduct of Defendants has proximately caused damages to Plaintiff in amounts to be proven at trial.

**COUNT IV**

**Violations of Law Cognizable under 42 U.S.C. §§ 1981 and 1985,**

**enforced through 42 U.S.C. § 1983**

117.

Based on the facts and allegations set forth in Paragraphs 52, 54-71, 73-83, and 85-98, Plaintiff asserts claims for violations of federal rights cognizable under 42 U.S.C. §§ 1981 and 1985, as enforced through 42 U.S.C. § 1983.

118.

Defendants undertook all of the wrongful and unlawful conduct giving rise to Plaintiff's claims enforced pursuant to 42 U.S.C. § 1983 while acting under color of state law.

119.

Defendant Brantley's wrongful and unlawful conduct violated clearly established federal law, inter alia, laws prohibiting discrimination in contracting against persons based on immutable characteristics, *i.e.*, race, and laws prohibiting unlawful interference with the right to make and enforce contracts based on race, as described in 42 U.S.C. § 1981 and enforced through 42 U.S.C. § 1983.

120.

Defendant Brantley undertook her wrongful and unlawful conduct intentionally and maliciously with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover punitive damages against her.

121.

Additionally, and in the alternative, Defendant Brantley undertook her wrongful and unlawful conduct recklessly with respect to the Plaintiff and his federally protected rights, entitling Plaintiff to recover punitive damages against her.

122.

Brantley acted in concert with others not employed by the County, both those identified herein and those to be identified during disclosures and discovery, to violate Plaintiff's state and federally protected rights in violation of 42 U.S.C. § 1985.

123.

As a direct and proximate result of Defendants' unlawful and wrongful conduct, Plaintiff has suffered damages in amounts to be proven at trial.

## COUNT V

## __Violations of Equal Protection guaranteed by the United States and Georgia Constitutions__

124.

Based on the facts and allegations set forth in Paragraphs 52, 54-71, 73-83, and 85 to 98, Plaintiff asserts claims for violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as well as Article I, Section I, Paragraph II of the Georgia Constitution.

125.

The equal protection guarantees of the United States and Georgia Constitutions entitle Plaintiff to equal protection under the laws, including equal protection from discrimination based on immutable characteristics, *i.e.*, race, as prohibited by law.

126.

No compelling or other legitimate governmental interest supports the County and Brantley's use of immutable characteristics such as race in the decisions and conduct giving rise to Plaintiff's claims.

127.

To the extent the existence of any valid interest could be argued, the County and Brantley's use of immutable characteristics such as race in the decisions giving rise to Plaintiff's Complaint were not the least restrictive means by which Defendants could have effectuated any such interest (and were and are in fact counterproductive to any such legitimate interest).

128.

Defendants violated Plaintiff's rights to equal protection by subjecting him to discrimination and interference in the making and enforcement of contracts on account of immutable characteristics, i.e., race.

129.

The Defendants undertook all of the unlawful conduct giving rise to Plaintiff's claims while acting under color of State law.

130.

Defendant Brantley's unlawful conduct violated clearly established law prohibiting interference with the making and enforcement of contracts by Plaintiff.

131.

As a direct and proximate result of the County and Brantley's violations of the Equal Protection Clause, Plaintiff has suffered damages in amounts to be proven at trial.

132.

Defendant Brantley undertook her unlawful conduct intentionally and maliciously with respect to Plaintiff and his state and federally protected rights, entitling Plaintiff to recover punitive damages against her.

133.

Additionally, and in the alternative, Defendant Brantley undertook her unlawful conduct recklessly with respect to Plaintiff and his state and federally protected rights, entitling Plaintiff to recover punitive damages against her.

**COUNT VI**

**Violations of Free Speech Rights under the United States and Georgia Constitutions**

134.

Based on the facts and allegations set forth in Paragraphs 59-71, 73-83, and 85-98, Plaintiff asserts claims for violations of his rights to free speech guaranteed by the First Amendment to the United States Constitution and Article I, Section I, Paragraph V of the Georgia

Constitution.

135.

The First Amendment to the United States Constitution and the free speech provision of the Georgia Constitution prohibit retaliation by governmental officials against persons for exercising their rights to speak on matters of public concern.

136.

Defendant Brantley, and others on her behalf, engaged in the wrongful and retaliatory conduct set forth herein, which conduct was designed to punish Plaintiff for the exercise of his rights to speak on matters of public concern, preclude or weaken the anticipated testimony of Plaintiff in a separate civil action against Brantley (the *Thompson* case), and deter others from exercising those rights.

137.

Defendant Brantley, and others on her behalf, engaged in conduct of such a nature and extent as to deter a person of ordinary firmness from exercising their right to speak on matters of public concern.

138.

As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages in amounts to be proven at trial.

139.

Defendant Brantley undertook her unlawful conduct intentionally and maliciously with respect to Plaintiff and his state and federally protected rights, entitling Plaintiff to recover punitive damages against her.

140.

Additionally, and in the alternative, Defendant Brantley undertook her unlawful conduct recklessly with respect to Plaintiff and his state and federally protected rights, entitling Plaintiff to recover punitive damages against her.

## COUNT VII

### Violations of the Rights to Be Free From Unreasonable Searches and Seizures

141.

Based on the facts and allegations set forth in Paragraphs 52, 61-64, 80, and 87-98, Plaintiff asserts claims for violations of his rights to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution and Article I, Section I, Paragraph XIII of the Georgia Constitution.

142.

The United States and Georgia Constitutions guarantee the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, i.e., those conducted without a warrant (except in certain circumstances not at issue here).

143.

Additionally, and in the alternative, upon information and belief Defendants Brantley, the County, Officer Weber and/or some other person yet to be identified, illegally (in the absence of a warrant based on probable cause, or even arguable probable cause) intercepted private communications between Plaintiff and third-parties, including Ottley on or about June 20, 2017, and utilized such private information in the wrongful conduct set forth herein (as discussed in Paragraph 80).

144.

As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered damages in amounts to be proven at trial.

145.

The County, Brantley, and/or Officer Weber undertook the unlawful actions set forth herein intentionally and maliciously with respect to Plaintiff and his state and federally protected rights, entitling Plaintiff to recover punitive damages against them.

146.

Additionally, and in the alternative, the County, Brantley, and/or Officer Weber undertook the unlawful conduct set forth herein recklessly with respect to Plaintiff and his state and federally protected rights, entitling Plaintiff to recover punitive damages against them.

**COUNT VIII**

**<u>Violations of the Georgia RICO Act</u>**

147.

Based on the facts of this case, specifically the wrongful and illegal acts set forth in Paragraphs 53, 61-83, and 87-98, Plaintiff asserts claims for violations of the Georgia RICO Act, O.C.G.A. § 16-14-1 *et seq.*

148.

Defendant Brantley engaged in a pattern of racketeering activity, in concert with Defendant Officer Weber and Defendant Ottley (and those to be identified during disclosures and discovery), as demonstrated by the wrongful and illegal overt acts described in Paragraphs 61-83 and 87-98.

149.

As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered

damages in amounts to be proven at trial, which are trebled for purposes of recovery pursuant to O.C.G.A. § 16-14-6.

150.

Defendants undertook their unlawful conduct intentionally and maliciously with respect to Plaintiff and his state and federally protected rights, entitling Plaintiff to recover punitive damages against them.

151.

Additionally, and in the alternative, Defendants undertook their unlawful conduct recklessly with respect to Plaintiff and his state and federally protected rights, entitling Plaintiff to recover punitive damages against them.

## COUNT IX

### Lost Earnings

152.

Based on the facts and allegations specifically referenced in the Counts set forth herein, Plaintiff asserts a claim for lost earnings, *et al.*

153.

As a result of Defendants' unlawful and wrongful conduct, Plaintiff has suffered lost salary, earnings, benefits, fees, and other remuneration in amounts to be proven at trial.

## COUNT X

### Attorneys' Fees

154.

Based on the facts and allegations specifically referenced in the Counts set forth herein, Plaintiff asserts a claim for attorneys' fees and costs of litigation.

155.

By their actions, as more particularly referenced in the Counts set forth herein and to be proven at trial, Defendants have acted in bad faith, have been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expense, entitling Plaintiff to recover attorneys' fees and costs against Defendants.

156.

Based on the facts and allegations specifically referenced in the Counts set forth herein, Plaintiff is entitled to recover his attorneys' fees and costs against Defendants as otherwise provided by state and federal law.

## COUNT XI

## Punitive Damages

157.

Defendants engaged in the conduct specifically referenced in the Counts set forth herein intentionally, willfully, and maliciously with respect to Plaintiff and in violation of his state and federally protected rights, entitling Plaintiff to recover punitive damages against them.

158.

Additionally, and at a minimum, Defendants engaged in the conduct specifically referenced in the Counts set forth herein with reckless disregard for Plaintiff and in violation of his state and federally protected rights, entitling Plaintiff to recover punitive damages against them.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays this Court grant the following relief:

(a)      That Plaintiff be awarded a declaratory judgment that Defendants violated the laws of the State of Georgia and Plaintiff's state and federally protected rights, all while acting

under color of law;

(b)    That Plaintiff be granted judgment against Defendants;

(c)    That Plaintiff have and recover from Defendants lost wages, benefits, fees, or other compensation, with prejudgment interest thereon;

(d)    That Plaintiff recover compensatory damages in an amount to be determined by a jury;

(e)    That Plaintiff recover liquidated and punitive damages;

(f)    That Plaintiff have and recover his attorneys' fees and costs of litigation pursuant to O.C.G.A. § 13-6-11, as well as all other applicable federal and state laws; and;

(g)    Any other such further monetary, non-monetary, and equitable relief that this Court deems proper in accordance with law.

Respectfully submitted this 23rd day of May, 2018.

/s/  Sam L. Brannen, Jr.
SAM L. BRANNEN, JR.
Georgia Bar No. 077301
Proceeding *Pro Se*

1080 Peachtree Street, NE
Suite 1411
Atlanta, Georgia  30309
Telephone: 404.808.9185
Email: sbrannenjr@brannenlegal.com

STATE OF GEORGIA
SUPERIOR COURT OF DEKALB COUNTY

SAM L. BRANNEN, JR.,           :
                                    :

     Plaintiff,               :          CIVIL ACTION
                                      :          FILE NO. 18 CV 4366 4
v.                          :
                                    :
                                    :          **JURY TRIAL DEMANDED**

DEKALB COUNTY, GEORGIA,     :
OVERTIS H. BRANTLEY, in her individual  :
capacity, and JAMES M. OTTLEY, in his  :
individual capacity,            :
                                    :
     Defendants.             :

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served a copy of the within and foregoing **Recast Fifth Amended Complaint** by filing same with the eFileGA system, which provides notice to all parties and attorneys of record. This Certificate and pleading have been delivered via U.S. Mail and email to Counsel for Ottley (who has not yet entered an appearance in this case):

Thomas E. Brennan, Esq.
Fain, Major, & Brennan, P.C.
100 Glenridge Point Pkwy. NE, Suite 500
Atlanta, GA 30342

     This 23th day of May, 2018.

                                      BRANNEN LEGAL, LLC

                                      /s/  Sam L. Brannen, Jr.
                                      SAM L. BRANNEN, JR.
                                      Georgia Bar No. 077301
                                      Proceeding *Pro Se*

1080 Peachtree Street, NE
Suite 1411
Atlanta, Georgia  30309
Telephone: 404.808.9185
Email: sbrannenjr@brannenlegal.com